BaRNey, J.,
delivered the opinion of the court:
This claim comes to this court under the fourteenth section of the Tucker Act. The claimant entered the employment of the Government as a laborer in the Bureau of Engraving and Printing in the month of February, 1902, and at the time of the accident hereinafter .mentioned and for some time before was performing the duties of elevator conductor. In order to begin his said duties in the morning it was necessary for him to go down two flights of stairs into the subbasement and pass along a hallway to the motor room of the elevator.
In August, 1902, for the purpose of making some improvements about the building of the Bureau of Engraving and Printing, the Government had made an opening in the floor in said hallway, digging out a section of the cement floor and making a cavity 6 or 7 feet in length, 2 or 3 feet in width, and 2^ or 3 feet in depth. This cavity was filled with earth and then covered with inch boards nailed down, leaving them extending their thickness above the cement floor. They were permitted to remain in this condition until the accident hereinafter mentioned.
On the 16th day of December, 1902, the claimant reached the Bureau of Engraving and Printing about 6.45 a. m., and proceeded to the motor room above mentioned to begin his *288 duties, and passed along said hallway until he reached said ■temporary floor covering', when he stubbed his toe against the same, fell down, and received the injuries mentioned in the above findings. It appears that at this time the hallways were dimly lighted with incandescent electric lights. It also -appears that the claimant assisted in making this excavation ' and had- passed over- this temporary covering several times every clay since it was constructed.
From these facts it appears to us beyond question that the •claimant was guilty of negligence, which contributed to the accident complained of, and if the case were tried to a jury any court would so decide. On the other hand, we believe the Government was negligent in allowing such an obstruction, which, though apparently trivial, was liable to, as it did in this case, prove serious, to remain so long before making a permanent covering to the excavation mentioned level with the balance of the floor; and was also negligent in having these hallways so dimly lighted at the time.
It is unnecessary to say that the claimant has no- legal claim ■against the Government,‘and, except where the rule of comparative negligence prevails; would have no claim against a private individual or corporation under the same state of facts.
Neither has the claimant any equitable claim except such as may arise from the fact that the Government was partly responsible for the injury received. It may be well to call - attention to the fact that Congress, by the act of April 22, 1908 (35 Stat. L., 65), has established the rule of comparative negligence in personal-injury cases by employees engaged in interstate commerce. While of course this act has no direct application to the case of the claimant it is cited to show the tendency of modern legislation on the subject of comparative negligence. It might also be added that several states have recently established the rule of comparative negligence in all •cases of that class.
The helpless and pitiable condition of the claimant appeals strongly to our sympathies, but we must find the facts as the ■evidence proves them, and state the law applicable to the .same as we believe it to be, leaving to Congress to determine *289 whether anything, and, if so, what amount, should be paid to the claimant by way of bounty or gratuity.
These findings and conclusions will be transmitted to Congress, together with copies of the opinions.
HowRT, Judge,
delivered the following opinion:
Sympathizing with the claimant as much as any judge can or should, I am at the same time constrained to find from a careful examination of the evidence that there was no negligence on the part of the Government.
There was no space between the lower surfaces of the boards and the earth filling the trenches, that being the condition at the time the claimant stubbed his toe. There can not well be a reasonable doubt, if disinterested evidence proves anything, but that the planking was securely nailed down at the time. Other employees in the building passed over the planking several'times a day before and after the 16th day of December, 1902, and found it in perfect condition.
In passing from the foot of the steps in the sub-basement to the elevator at the west end of the east-west corridor it was not necessary to pass over the planking, although the same was across the path petitioner would naturally take. Lights were burned nightly in the corridors for the benefit of the night watchmen, who made the rounds of the halls where the planking had been restored. The corridors were lighted by incandescent electric bulbs arranged in clusters. There was one cluster overhead at the intersection of the two corridors nearly over the place where the claimant fell. Another cluster was in the east-west corridor about 8 feet away, and others were placed immediately north and south. The claimant arrived at the building at a quarter to 7 o’clock in the morning. The circumstantial evidence is strong that the lights had not been turned off at the time of claimant’s arrival. At the time of the alleged injury the foreman of electricians on duty at the time in the building received no complaint from the claimant or from any source that the lights had been extinguished.
The claimant (who is the only witness as to the causes of his fall) made no outcry at the time, and made no call to a *290 colored boy whom he concedes that he saw as, he says, he was getting np. (Eec., 3 and 16.)
Dr. Barton, of Washington, D. C., whom, the claimant says he consulted when he left the building several hours after the alleged fall, has not been called to testify.
After returning to Ohio, besides serving as deputy clerk in the county courts at Clinton, claimant accepted employment with the Metropolitan Life Insurance Company of New York. He subsequently engaged in the work of photography, and continued in this vocation until February, 1910. He was married on July 24, 1904.
I concur in the conclusion that the claimant has no legal or equitable claim against the Government. There is no room for the application of any rule of comparative negligence. v
Neither the Government nor the owner of any other house is required to construct the interior flooring with even surfaces throughout. Negligence can not arise against the owner of a building because of uneven surfacing of flooring in rooms and halls. If the law requires the floors of every Government building or dwelling house or place of business to be on an exact level for the owner to escape the conclusion of negligence, then most buildings everywhere need reconstruction.
The rule of comparative negligence in personal-injury cases by employees engaged in interstate commerce, established by the act of April 22, 1908, 35 Stat., 65, is without bearing in the present case for any purpose. The act cited by the majority of the court relates to the liability of common carriers by railroad to their employees. That act should not be confused with the only act relating to compensation for injuries sustained in the course of their employment by Government employees. The sole act relating to such claims by Government employees was not passed until May 30, 1908, 35 Stat., 556. It is entitled “An act granting to certain employees of the United States the right to receive compensation for injuries sustained in the course of their employment.”
*291 There is a proviso to the later act “ that no compensation shall be paid under this act where the injury is due to the negligence or misconduct of the employee injured.'1''
The act of 1908 is not general, but relates to an artisan or laborer in manufacturing establishments of the United States, its arsenals or navy yards, or in the construction of river and harbor or fortification work, or in hazardous employment on construction work in the reclamation or management and control of arid lands, or in hazardous employment under the Isthmian Canal Commission. In such cases one year’s pay is allowed where there is no contributory negligence.
Probably Congress have the power to change the law at will for all cases. Should the legislative authority be exercised to make a donation in the present case, that is a matter for determination there. The function of the court in stating conclusions is restricted to the ultimate fact and the law arising out of the record.
For the reasons set forth I can see no room for the application of any rule of comparative negligence as that question relates to the present case either in fact or in law.